23 F.3d 407
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Ghadir Abdul Masih MANSOUR, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-3255.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1994.
 
 Before: NELSON and NORRIS, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case comes before us on a petition for review of an order in which the Board of Immigration Appeals denied an application for discretionary relief from deportation. Finding no abuse of discretion by the Board, we shall deny the petition for review.
 
 
 2
 * The petitioner, Ghadir Mansour, is a twenty-seven-year-old resident alien. Mr. Mansour came to this country from Iraq as a child, and he has lived in the Detroit area for the past 20 years or so.
 
 
 3
 The Immigration and Naturalization Service initiated deportation proceedings against Mr. Mansour in May of 1991, alleging that he was deportable under 8 U.S.C. Sec. 1251(a)(2)(A)(ii). Under that section an alien may be deported upon conviction of two crimes of moral turpitude not arising out of a single course of illegal conduct.
 
 
 4
 Mr. Mansour admitted to being deportable, but he requested discretionary relief from deportation under Sec. 212(c) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(c). At a hearing held before an immigration judge in March of 1992, the INS established that in 1988 Mr. Mansour had been convicted on a felony charge of assault with intent to commit sexual penetration. In 1990, the INS showed, Mr. Mansour had been convicted on a felony charge of malicious destruction of police property. Mr. Mansour admitted that he had been convicted of driving while intoxicated on several occasions, and that he had once spent five days in jail on such a conviction. It was shown that Mr. Mansour's record contained other arrests as well.
 
 
 5
 Mr. Mansour testified that he was an alcoholic and that he regularly abused Valium and marijuana. He admitted to having used cocaine, mescaline, LSD, and PCP. A term of probation to which Mr. Mansour had been sentenced in connection with his sexual assault conviction had been extended because of his failure to abstain from using illegal drugs.
 
 
 6
 Mr. Mansour testified that in 1991, following an arrest and conviction for drunken driving and notification that deportation proceedings were to be started, he entered a residential treatment facility where he underwent a month of treatment and counseling for drug abuse. At the time of the hearing, Mansour testified, he was living in a halfway house where he was participating in further counseling. At the time of the hearing he was working full-time as a clerk at a supermarket.
 
 
 7
 It was shown at the hearing that Mr. Mansour's criminal activities had begun shortly after the death of his father in 1983. After his father's death, he testified, he quit high school and began working to help support his family. Depressed over his father's death, he said, he began abusing drugs. At age eighteen, Mansour fathered an illegitimate child. Pursuant to a court order issued in a paternity action four years later, he began paying child support. He fell behind in his payments, but made up the arrearage shortly before the immigration hearing. Mr. Mansour testified that he had a close, loving relationship with his son, and that it would work extreme hardship on the boy to have his father deported. In an affidavit submitted to the immigration judge before the hearing, however, Mr. Mansour indicated that he had contact with his son only intermittently.
 
 
 8
 Mr. Mansour stated that he was engaged to marry a United States citizen whom he had been seeing for several years. This woman submitted a letter expressing the view that Mr. Mansour had been completely rehabilitated from his past "wild" behavior. Letters also were submitted by Mr. Mansour's mother and brothers, all of whom stated that Mansour had a close relationship with his family and that he was a source of emotional and financial support to them.
 
 
 9
 In the course of the hearing Mr. Mansour disclosed that he had testified before a state grand jury a year and a half earlier and had been asked at that time about activities relating to cocaine. Although he told the immigration judge that he could not remember whether he had been asked about selling cocaine, he said that he had invoked his Fifth Amendment right not to incriminate himself. When the immigration judge inquired into the conduct underlying the grand jury investigation, Mansour again invoked the Fifth Amendment and refused to answer. The immigration judge asked Mr. Mansour directly, three times, whether he ever had sold or dealt in illegal narcotics, and Mansour invoked the Fifth Amendment each time.
 
 
 10
 Toward the end of the hearing, Mr. Mansour indicated that he planned to call his mother and a brother as witnesses. He confirmed that both already had submitted letters for the record, and he said that their testimony would parallel their written statements. The immigration judge declined to receive the additional evidence, noting that the testimony of the two relatives would merely be cumulative. Mr. Mansour requested an opportunity to make a closing argument, but the judge declined to hear closing arguments from either party.
 
 
 11
 In April of 1992 the immigration judge delivered a detailed written opinion denying Mr. Mansour's application for discretionary relief from deportation. Although finding that Mr. Mansour had demonstrated "unusual ... positive equities" militating in favor of waiver of deportation, the judge concluded that these were outweighed by various negative factors. The adverse factors included Mr. Mansour's "serious criminal history," as well as a long history of substance abuse. The immigration judge noted that Mansour's most recent serious conviction had occurred less than two years prior to the hearing. Given the many years over which Mansour engaged in illegal (and often violent) behavior, the judge decided, a longer period of successful rehabilitation would be necessary to "affirmatively show that he ha[d] reformed."
 
 
 12
 The immigration judge also noted that Mr. Mansour's invocation of the Fifth Amendment during the hearing showed a "lack of complete forthrightness," a circumstance that "impact[ed] on his ability to meet [the] burden of pro[ving]" that he merited a favorable exercise of discretion. Mr. Mansour's unwillingness to answer questions about this aspect of his prior activities, in the judge's view, raised serious doubts both as to the extent of his prior criminal activity and the degree of his purported rehabilitation.
 
 
 13
 In December of 1992 the order of the immigration judge was affirmed by the Board of Immigration Appeals. Mr. Mansour filed a timely petition for review.
 
 II
 
 14
 * Mr. Mansour contends first that he was denied due process when the immigration judge declined to entertain oral testimony from his mother and brother and declined to hear closing arguments. This contention was not raised on appeal before the BIA; under the doctrine of exhaustion of administrative remedies, we cannot consider it here. 8 U.S.C. Sec. 1105a(c); Rodriguez v. INS, 9 F.3d 408 (5th Cir.1993).
 
 B
 
 15
 The remaining question is whether the BIA abused its discretion in denying relief from deportation. The statute makes relief from deportation available only "in the discretion of the Attorney General." 8 U.S.C. Sec. 1182(c). The BIA acts for the Attorney General, and a BIA order denying discretionary relief must be upheld unless it was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis...." Balani v. INS, 669 F.2d 1157, 1161 (6th Cir.1982). The statute provides no standards to govern the Attorney General's discretion in granting relief, and her discretion is thus "unusually broad." Ashby v. INS, 961 F.2d 555, 557 (5th Cir.1992). The scope of our review, conversely, is quite narrow--the decision of the BIA must be upheld unless it was arbitrary or capricious. Miranda de Gonzalez v. INS, 996 F.2d 804, 808 (6th Cir.1993).
 
 
 16
 The BIA did not act arbitrarily or capriciously in affirming what it called the immigration judge's "cogent decision here." The immigration judge gave a rational explanation of his weighing of the merits of the case. It was clearly within his discretion to accept the letters from Mr. Mansour's mother and brother as indicative of what their testimony would have been; there is no reason to think that live testimony would have been anything other than cumulative. The original decision on the merits did not rest on an impermissible basis, and the BIA did not abuse its discretion in affirming the decision.
 
 
 17
 The BIA certainly did not abuse its discretion by taking into account Mr. Mansour's refusal to answer questions as to whether he had been a drug dealer. Mr. Mansour's forthrightness at the hearing was a relevant factor in determining the extent of his rehabilitation and the likelihood of recidivism. Adverse inferences may properly be drawn from assertion of the Fifth Amendment privilege in deportation proceedings, see Tejeda-Mata v. INS, 626 F.2d 721, 725 (9th Cir.1980), cert. denied, 456 U.S. 994 (1982), and Cabral-Avila v. INS, 589 F.2d 957, 959 (9th Cir.1978), cert. denied, 440 U.S. 920 (1979), and although the BIA did not go so far as to treat the refusal to answer as an indication that Mr. Mansour had in fact been a drug dealer, such an inference would seem to have been justified on this record.
 
 
 18
 The petition for review is DENIED.